UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1-22-cv-

DEYANIRA LANDIN

        Plaintiff,

v.

AUTOZONERS, LLC.

        Defendant.

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff, Deyanira Landin, by and through her attorneys, HKM Employment Attorneys, LLP, hereby files her Complaint and Jury Demand against AutoZoners, LLC ("AutoZone" or "Defendant") and in support thereof states as follows.

**PRELIMINARY STATEMENT**

1. This is an employment discrimination suit brought by a former employee of AutoZone who was sexually harassed by Raphael (upon information and belief last name Ananti) and constructively discharged after reporting workplace harassment. After Plaintiff reported the sexual harassment to one of her trainers, Armando Avalos, he said, "It's going to keep on happening. You'll just have to get used to it." Upon information and belief, Mr. Avalos took no action to stop the harassment. Plaintiff then elevated her concerns to Demetri White, the Store Manager on or around December 12, 2020. She asked that the employee's phone numbers "be used for work purposes only," and at that time, reported the harassment and showed Mr. White the text messages from her harasser, Mr. Ananti. Mr. White never made the announcement about only

using coworkers phone numbers for work business. Upon information and belief, Mr. White took no action and no steps to cure the harassment or investigate. The harassment continued and Plaintiff was forced to resign from her position. Accordingly, Plaintiff brings claims of hostile work environment and constructive termination against the Defendant pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

## PARTIES

2. Plaintiff is and at all times relevant to the Complaint was a resident of Colorado.

3. AutoZone is a Nevada limited liability company with a principal office located at 123 S. Front St., Memphis, Tennessee 38103.

4. AutoZone is a leading retailer of automotive parts and accessories. The company employs approximately 95,000 employees in over 6,000 stores across the United States, Puerto Rico, Brazil, and Mexico.

5. Plaintiff was employed by Defendant as a Parts Sales Manager, supporting Defendant by working on the retail floor and assisting customers with the purchase of auto parts.

6. On or around August 28, 2020, Plaintiff was hired to work at Defendant's Thornton, Colorado store 813, located at, 10105 N. Washington, Thornton, Colorado 80229.

7. On or around November 16, 2020, Plaintiff was transferred to store 5068 located at 1002 W. 104th Ave., Northglenn, Colorado 80234.

8. Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f).

9. Defendant is an employer within the meaning of 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

10. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

11. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964.

12. The Court has original jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. §§ 1331.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in the District of Colorado.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

14. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

15. Plaintiff filed Charges of Discrimination, Numbers 32A-2020-00437 and E2000008689 with the U.S. Equal Employment Opportunity Commission ("EEOC"), against Defendant for retaliation under Title VII on April 15, 2020.  Plaintiff was issued a Notice of Right to Sue with respect to the above Charge Numbers on August 24, 2022 and has filed the instant action within ninety (90) days of receipt of same.

16. Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

17. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

18. Plaintiff began working for Defendant as a Parts Sales Manager ("PSM") in or around August 2020.

19. As Parts Sales Manager, Plaintiff was responsible for working on the retail floor and assisting customers with the purchase of auto parts as well as installing some parts such as wiper blades and batteries for customers.

20. As Parts Sales Manager, Plaintiff was trained by Mr. Avalos and reported to the Store Manager, Mr. White.

21. Plaintiff's role was customer service – she primarily assisted customers with purchases, installs, opening/closing the store and clean up.

22. On or around November 2020, Plaintiff began receiving inappropriate text messages and WhatsApp messages from Mr. Ananti.

23. Mr. Ananti also sexually harassed Plaintiff in person while at work. He acted overly familiar with her at work, despite not being friends. For example, Plaintiff was not feeling well at work and Mr. Ananti spoke with her in a flirtatious manner about giving her medical care. He told her that he was a doctor in his home country and could help her medically if something happened to her. Plaintiff rejected his offer with a flat, cold affect.

24. Plaintiff reported the harassment and messages to one of trainers, Mr. Avalos.

25. Thereafter, on or around December 12, 2020, Plaintiff reported the sexual harassment (including the text messages) to Store Manager, Mr. White.

26. Plaintiff showed Mr. White the inappropriate text messages from Mr. Ananti to Plaintiff.

27. Plaintiff also asked Mr. White that an announcement at the next store meeting be made to only use employee numbers for work purposes.

28. Upon information and belief Mr. White took no action to protect Plaintiff – including the requested announcement about appropriate usage of coworkers' phone numbers.

29. The harassment continued after her report to Mr. White.

30. Mr. Ananti also commented on Plaintiff's appearance in the workplace. For example, on or around the afternoon of December 16, 2020 when Plaintiff was in front of a computer with Mr. White, Mr. Ananti was in the same room on a ladder. Mr. Ananti called over and asked Plaintiff how she was, when Plaintiff responded that she was fine, Mr. Ananti said in front of Plaintiff and Mr. White, "You are very fine."

31. At that time, Mr. White did not intervene and took no action to protect plaintiff from the sexual harassment.

32. On that same day, on December 16, 2020, Mr. Ananti confronted Plaintiff at work and said, "I text you and you don't respond to me why" and "I want you to respond."

33. The escalation of requiring a response caused Plaintiff to feel scared, physically, and emotionally uncomfortable. Plaintiff was hopeful AutoZone would act quickly to fix the situation.

34. Whenever Mr. Ananti and Plaintiff were scheduled to work together, he made excuses to be near her, watch her, interact with her, and move into her space. For instance, Mr. Ananti would stand near Plaintiff in the store and scan the same items over and over. He would stand in front of the counter where she was working and look at the candies for long periods of

time as if he was going to buy something but then would not buy anything. Other days, he would stand in the distance and watch Plaintiff instead of working for up to five minutes at a time.

35. During working hours, Mr. Ananti would move into Plaintiff's space – standing closer and speaking closer to her than a normal distance. He would find excuses to be near her, even observing the kind of drink she previously bought and presenting her with one in front of other employees. Plaintiff responded as she did to all of his advances and with a flat, cold affect, "Oh thanks."

36. Mr. Ananti's text messages included other personal questions like what she wanted for Valentine's Day.

37. After reporting the harassment to her Store Manager, Plaintiff was never made aware of any investigations or repercussions given to Mr. Ananti. Importantly, despite reporting the harassment, Mr. Ananti's behavior did not stop.

38. Mr. Ananti became focused on why Plaintiff was not responding to him. She was uncomfortable with the way he continued to treat her.

39. Plaintiff was nervous and anxious to go to work on days Mr. Ananti was working. It was humiliating and scary for her to have someone boldly continue to pursue her despite never showing interest and reporting him to management.

40. Also in Plaintiff's final weeks, Mr. Ananti was calling her at home, which caused her to freeze up, feel unsafe, and anxious about facing him at work.

41. In Plaintiff's final weeks at work, the previous behavior continued and in addition, Mr. Ananti would continuously circle the office to pass through her space and look at her with an extended stare, which caused Plaintiff to feel fear in the workplace and daily apprehension of his

presence.  Mr. Ananti's leering was unwelcome and a contributing factor to the hostile work environment.

42.     Plaintiff saw Mr. Ananti on the schedule with her and knew she could not stand one more day of the harassment.  Finally, unable to withstand the continuing harassing messages, comments, and calls, and corresponding negative impact on her well-being, Plaintiff was forced to resign from her employment to escape to hostile environment where she was not safe from sexual harassment.

43.     The harassment continued even after she left AutoZone.

## FIRST CLAIM FOR RELIEF
(Hostile Work Environment Based on Gender in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"))

44.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

45.     As a female, Plaintiff is a member of a protected class under Title VII.

46.     AutoZone subjected Plaintiff to a hostile work environment based on Plaintiff's gender as supported by the above-described harassment Plaintiff was forced to endure; which was sexually charged, threatening, abusive, humiliating and so severe and pervasive as to detrimentally alter the terms and conditions of Plaintiff's employment.

47.     Plaintiff reported the harassment and disparate treatment she was forced to endure to AutoZone, and AutoZone failed to initiate a reasonable investigation of the reports and/or to take appropriate prompt remedial action.  As a result, the harassment continued and created a hostile work environment based on Plaintiff's gender.

48. AutoZone's above-described conduct was willful, wanton and/or committed with conscious and/or reckless indifference to Plaintiff's equal rights under the law.

49. As a result of AutoZone's above-described discriminatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

### SECOND CLAIM FOR RELIEF
(Wrongful Termination Based on Gender in Violation of Title VII, 42 U.S.C. § 2000e, et seq.)

50. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

51. Plaintiff was qualified for her position.

52. AutoZone constructively terminated Plaintiff based on her gender due to the hostile work environment becoming unbearable without curing it.

53. A reasonable jury could find that AutoZone created working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

54. AutoZone was given the opportunity to cure the hostile work environment and either chose not to take any action or did take action which made the hostile work environment worse.

55. Management at AutoZone did not try to dissuade Plaintiff from leaving or offer any assurance that she would be protected from future harassment.

56. Plaintiff was pressured to resign; the pressure was motivated by the increased sexual harassment after her report of discrimination complaint, and that the pressure had reached

a level of severity that a reasonable person in her position would have found intolerable at the time of her constructive termination.

57. Lacking support of coworkers, supervisors, and management, Plaintiff reasonably perceived a risk to her physical safety and emotional well-being in light of the workplace setting.

58. Plaintiff was forced to resign by the intolerable working conditions.

59. AutoZone's above-described conduct was willful, wanton and/or committed with conscious and/or reckless indifference to Plaintiff's rights under the law.

60. As a result of AutoZone's above-described discriminatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

A. Compensatory damages including, but not limited to, those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B. Attorneys' fees and costs of this action;

C. Pre-judgment and post-judgment interest at the highest lawful rate; and

D. Such further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

Dated this 22nd day of November 2022.

        Respectfully submitted,

        HKM EMPLOYMENT ATTORNEYS LLP

        By: /s/ Claire E. Hunter
        Claire E. Hunter
        730 17th Street, Suite 750
        Denver, CO 80202
        (720) 668-8989
        chunter@hkm.com
        *Attorney for Plaintiff*
        *Deyanira Landin*